UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WOODROW STALLINGS, JR.,

      Plaintiff,

v.                   Case No. 22-cv-31-pp

MILWAUKEE COUNTY JAIL MEDICAL STAFF,

      Defendants.

---

**ORDER DENYING AS MOOT MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 10) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

  Woodrow Stallings, Jr., who is confined at the Milwaukee County Jail and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. The plaintiff has paid the full filing fee.[1] This decision screens his complaint, dkt. no. 1.

**I.  Screening the Complaint**

  A.  <u>Federal Screening Standard</u>

  Under the Prison Litigation Reform Act, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court

---

[1] Along with his complaint, the plaintiff filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. The court issued an order assessing an initial partial filing fee of $133.28, which the court received from the plaintiff on February 8, 2022. Two days later, the plaintiff paid the balance of the filing fee. The court will deny as moot the plaintiff's motion for leave to proceed without prepaying the filing fee.

1

must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by

plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued "Milwaukee County Jail Medical Staff." Dkt. No. 1 at 1. He alleges that medical staff refused to give him a "no tomato and pork tray." Id. at 2.

The plaintiff alleges that when he booked into the Milwaukee County Jail on November 25, 2020, the intake nurse allegedly asked him whether he was allergic to any medications. Id. The plaintiff states that he answered "No," but that he also said that he is allergic to tomatoes and that he does not eat pork. Id. While the plaintiff waited for his wristband, the "mental health lady" allegedly asked him some questions, including whether he was allergic to any medications. Id. at 2-3. The plaintiff states that he again answered "No," and that he again stated that he was allergic to tomatoes and that he does not eat pork. Id. at 3. The plaintiff states that he thinks that the nurse and/or the mental health lady put the information about tomatoes and pork into the plaintiff's "charts." Id.

The plaintiff alleges that he moved to Pod 3C and that for a month and a half, he refused to eat because staff included tomatoes on the food trays, and he did not know what kind of meat staff served incarcerated persons. Id. He says that the "main" corrections officer he saw in 3C was Seabreeze. Id. After his stay in Pod 3C, the plaintiff allegedly was moved to Pod 5C and he told staff

3

there about his tomato allergy and that he does not eat pork. Id. The plaintiff states that staff told him to put in a "pink and white." Id. He alleges that he did so and that he also told them he was not going to eat anything. Id. The "mental health man" allegedly spoke with the plaintiff and told him that they do not serve pork and that, if they do, he could sue the county. Id. The plaintiff states that for three weeks in December staff served bologna sandwiches, which contain pork. Id. He also says that for "plenty of days before that they" had been giving him bologna sandwiches. Id. at 3-4. He says he had not eaten pork in over seven years and that when he goes grocery shopping, he reads the label on meat packages before buying. Id. at 4.

The plaintiff alleges that he had an allergic reaction to gravy that contained tomatoes. Id. at 4. A nurse named Ann allegedly called the clinic for medication for the plaintiff "before it got too bad." Id. The plaintiff alleges that another time the nurse told the plaintiff to eat other things around the tomatoes, and the plaintiff tried this, but he still had an allergic reaction. Id. He states that he just could not do it anymore and he stopped eating the food. Id.

The plaintiff alleges that, to eat, he must spend most of his money on junk food which is not good for him because he has high blood pressure. Id. He states that if a friend had not helped him out, he would have starved to death by now. Id. The plaintiff allegedly weighed over 300 pounds when he arrived at jail and now he weighs about 214 pounds. Id. The plaintiff states that he has been at the jail for over a year and that he still is going through the

4

same thing. Id. He allegedly asked jail staff to let him take an allergy test to prove his allergies. Id. He also states that the names will be on the "pink and whites" and on the grievances he filed. Id.

For relief, the plaintiff seeks $900,000. Id. at 17. He also states that he wants to make sure that staff document every allergy. Id.

C.  Analysis

The court assumes that the plaintiff is a pretrial detainee because he is confined at the Milwaukee County Jail. A pre-trial detainee cannot be punished without due process of law. Bell v. Wolfish, 441 U.S. 520 (1979). "[M]edical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in Kingsley [v. Hendrickson, 576 U.S. 389 (2015)]." Miranda v. Cty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018). The first consideration is "whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case." McCann v. Ogle Cty., 909 F.3d 881, 886 (7th Cir. 2018) (quotation marks, brackets, and citations omitted). Then, the court considers "whether the challenged conduct was objectively reasonable," based on the totality of the facts and circumstances. Id. Here, the plaintiff's allegations that after he advised them of his allergies, jail staff refused to give him a medically necessary diet by providing him food trays with tomatoes states a claim for violation of his constitutional rights.

5

The plaintiff does not say why he does not eat pork. If the plaintiff has a health reason, such as an allergy, or if he has another reason, such as a religious belief, then the jail's failure to provide him meals without pork might implicate his constitutional rights. However, because the plaintiff has not provided this information, the court cannot tell whether the jail's decision to give him bologna sandwiches that allegedly contained pork implicated his constitutional rights.

Based on the plaintiff's allegations as well as the relief he seeks, it appears that he wants to sue the individual medical staff members who allegedly failed to document his food allergy. But the plaintiff has not sued any individual defendants. It does not appear that this is because he does not know their names; he refers to "pink and white" slips and grievance forms that contain the names of the individuals and, presumably, he has access to these forms.

For a defendant sued in his or her individual capacity, to establish personal liability under §1983, the plaintiff must show that the official caused the deprivation of a federal right. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citing Monroe v. Pape, 365 U.S. 167 (1961)). A §1983 claim will lie against those individuals personally responsible for the constitutional violation. Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). "Because vicarious liability is inapplicable to Bivens and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. This can include

6

having "known about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see." Rasho v. Elyea, 856 F.3d 469, 478 (7th Cir. 2017) (citations, internal quotation marks, and alterations omitted). Additionally, "plaintiffs may not rely on 'vague references to a group of "defendants," without specific allegations tying the individual defendants to the alleged unconstitutional conduct.'" Engel v. Buchan, 710 F.3d 698, 710 (7th Cir. 2013) (quoting Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008)). A §1983 plaintiff must "ground his legal conclusions in a sufficiently plausible factual basis" that places each defendant "on notice of what exactly [he or she] might have done to violate his rights under the Constitution." Brooks v. Ross, 578 F.3d 574, 582 (7th Cir. 2009).

The plaintiff's complaint does not state a claim because he has not named any individual defendant who allegedly violated his rights. The plaintiff may not proceed on a claim under §1983 against the defendant he did name, "Milwaukee County Jail Medical Staff." Section 1983 allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. The Milwaukee County Jail is not a person—it is not an individual subject to suit under §1983. In Wisconsin, the jail is an arm of the sheriff's department. Under Wisconsin law, the sheriff's department is an arm of the County. See Abraham v. Piechowski, 13 F. Supp. 2d 870, 877-79 (E.D. Wis. 1998). This means that neither the jail nor the sheriff's department are "legal entit[ies] separable from the county government which [they] serve[] . . . ." Whiting v. Marathon Cty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004)).

The court will give the plaintiff the opportunity to amend his complaint to name individual staff members who he believes violated his constitutional rights.[2] When writing his amended complaint, the plaintiff must provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its blank amended complaint form. The plaintiff must list the case number for this case on the first page. He must list the names of all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The

---

[2] As noted above, it does not appear that the plaintiff sued Milwaukee County Jail Medical Staff because he does not know the names of the individual medical staff members who allegedly violated his rights. If, however, the plaintiff does not know the names of the individual staff members, he may name the Milwaukee County Sheriff as a defendant in the amended complaint and he may identify the individual defendants as "John Doe" or "Jane Doe" defendants. The plaintiff then will have the opportunity to conduct discovery on the Milwaukee County Sheriff for the limited purpose of identifying the names of any Doe defendants against whom he states a claim for relief.

amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court back to his original complaint, rather than repeating in the amended complaint any of the facts from the original complaint that are necessary to his claims.

## II. Motion to Appoint Counsel

The plaintiff has filed a motion for appointment of counsel. Dkt. No. 10. He states that he cannot afford a lawyer, the issue involved in this case is complex and that he is incarcerated at the Milwaukee County Jail and has limited access to the law library. Id. at 1-2. In addition, the plaintiff says he wrote to four lawyers in an attempt to find one on his own. Id. at 2. He states that he has limited legal knowledge and that this is a complex case because it contains knowledge that he cannot obtain. Id. The plaintiff also says the case involves medical issues that may require expert testimony and that it will require discovery of documents and depositions of witnesses. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

9

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the

10

case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

11

The plaintiff states that he wrote to four lawyers and that one lawyer informed him that he has moved out-of-state. Dkt. No. 10 at 2. He does not say what response, if any, he received from the other lawyers he contacted. Even if the plaintiff had included this information and thereby satisfied the first requirement for recruitment of counsel, the court would not grant his motion because this case is at a very early stage. The plaintiff only needs to file an amended complaint and his filings in the case show that he can do that. The court will deny without prejudice the plaintiff's motion to appoint counsel.

### III. Conclusion

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for appointment of counsel. Dkt. No. 10.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **October 26, 2022**. If the plaintiff files an amended complaint in time for the court to *receive* it by October 26, 202, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on October 26, 2022, the court will dismiss this case based on the plaintiff's failure to state a claim in

12

his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

---

[3] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court will include with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank amended complaint form.

Dated in Milwaukee, Wisconsin, this 4th day of October, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**